CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
January 28, 2025
LAURA A. AUSTIN, CLERK
BY: s/A. Beeson
     DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| BENJAMIN CARTER, ) | |
|     Plaintiff, ) | Case No. 7:23-cv-00425 |
| ) | |
| v. ) | |
| ) | By: Michael F. Urbanski |
| CHRISTOPHER KING, et al., ) | Senior United States District Judge |
|     Defendants. ) | |

## MEMORANDUM OPINION

Benjamin Carter, a former Virginia inmate proceeding pro se, filed this civil action under 42 U.S.C. § 1983 against Christopher King and Leah Holbrook. Defendant King has moved for summary judgment on the ground that Carter failed to exhaust his administrative remedies before filing suit, as required by the Prison Litigation Reform Act (PLRA). For the reasons set forth below, the motion for summary judgment, ECF No. 51, is **DENIED**.*

### I. Background

This case arises from events that allegedly occurred after Carter was transferred back to Red Onion State Prison (Red Onion) and placed in solitary confinement on April 17, 2023. See Verified Am. Compl. (Am. Compl.), ECF No. 34, at 2. At all times relevant to the case, King was on the correctional staff at Red Onion and held the rank of major. Id. at 1. Carter had previously filed a lawsuit against King and other correctional officers, which remained pending at the time Carter returned to Red Onion. Id. at 2 (citing Carter v. Ely, No. 7:20-cv-00713 (W.D. Va.)).

---

\* Defendant Holbrook has filed a motion to dismiss and for summary judgment. That motion will be addressed separately.

According to the amended complaint, Carter began experiencing severe pain and swelling in his testicles on the night of April 17, 2023. Id. The next day, after his requests for medical assistance went unanswered, Carter verbally complained to correctional officers about the pain and swelling. Id. at 3. The correctional officers informed Carter that "the 'Major' (referring to King) told them 'not' to give [Carter] written complaints and to let [him] 'suffer' because [Carter] sued [King]." Id.; see also id. (alleging that an unidentified officer "said that King had instructed them (ROSP staff) not to give [Carter] anything regarding paperwork to help [Carter] 'sue' him (King)").

Carter continued to experience constant pain and swelling. Id. When he finally saw a physician a month later, the physician diagnosed him with a hydrocele, ordered an ultrasound, and prescribed a jockstrap to alleviate the swelling. Id. at 4. King, however, refused to allow Carter to have the jockstrap, and the pain and swelling increased. Id. at 4–5.

Carter was rushed to the medical department on May 26, 2023. Id. at 5. Nurses responsible for assisting him "apologized for King denying [him] prescribed medical treatment and stated that they went over King . . . to the Warden . . . to approve the prescribed jockstrap." Id. By that point, the hydrocele had worsened and required further medical attention. Id. at 5–6.

In July 2023, while he was still incarcerated, Carter filed this action under 42 U.S.C. § 1983 against King and Holcomb. Carter's amended complaint includes two claims against King: (1) that King retaliated against him for engaging in activity protected by the First Amendment; and (2) that King intentionally denied him access to medical treatment in violation of the Eighth Amendment. Id. at 8–9.

2

King has moved for summary judgment on the basis that Carter failed to exhaust his administrative remedies prior to filing suit. The motion has been fully briefed and is ripe for disposition.

## II. Standard of Review

Under Rule 56 of the Federal Rules of Civil Procedure, the court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When ruling on a motion for summary judgment, the court "must construe all facts and reasonable inferences in the light most favorable to the nonmoving party." Shaw v. Foreman, 59 F.4th 121, 129 (4th Cir. 2023). The court "cannot weigh the evidence or make credibility determinations." Jacobs v. N.C. Admin. Office of the Courts, 780 F.3d 562, 569 (4th Cir. 2015).

## III. Discussion

The PLRA provides that "[n]o action shall be brought" in federal court by an inmate challenging prison conditions "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court has held that the exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes," Porter v. Nussle, 534 U.S. 516, 532 (2002), and that "proper exhaustion" is required, which includes "compliance with an agency's deadlines and other critical procedure rules," Woodford v. Ngo, 548 U.S. 81, 90 (2006).

Although the PLRA's exhaustion requirement is "strict," it "does not operate as an absolute bar to prison litigation in federal court." Griffin v. Bryant, 56 F.4th 328, 335 (4th Cir. 2022). Instead, "it sets forth a built-in exception, specifying that a prisoner need not exhaust

3

remedies if they are not available." Id. (internal quotation marks omitted) (citing Ross v. Blake, 578 U.S. 632, 635–36 (2016)). In other words, if "an administrative remedy, although officially on the books, is not capable of use to obtain relief," the exhaustion requirement "does not come into play." Ross, 578 U.S. at 643. The Supreme Court has identified three circumstances that satisfy this standard: (1) where an administrative remedy "operates as a simple dead end," with prison officials "unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) where the administrative scheme is "so opaque" that it is "practically . . . incapable of use" because "no ordinary prisoner can discern or navigate it"; and (3) where "prison administrators thwart inmates from taking advantage of a grievance procedure through machination, misrepresentation, or intimidation." Id. at 643–44; see also Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008) ("[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it.").

      **A.**    **Inmate Grievance Procedure**

The Virginia Department of Corrections (VDOC) has established a grievance procedure for inmates that is set forth in VDOC Operating Procedure (OP) 866.1. Still Aff., ECF No. 52-1, at ¶ 6. Grievable issues include matters relating to conditions of care, retaliation, and other actions of staff that affect an inmate personally. OP 866.1 § III(B)(1), eff. Jan. 1, 2021, Still Aff. Encl. A, ECF No. 52-1.

Pursuant to OP 866.1, inmates must first attempt to resolve an issue informally. If a verbal complaint is not resolved to the inmate's satisfaction and the inmate wishes to pursue the issue, the inmate must submit an informal written complaint. OP 866.1 § I(D)(2); see also

4

Still Aff. ¶ 6 ("The grievance process first requires submission of an informal complaint."). The informal written complaint "must be received by designated staff within 15 days of the original incident or discovery of the incident," and the designated staff member then has 15 days to provide a response. OP 866.1 § I(D)(2)–(3). If an inmate does not receive a timely response to a written complaint or if the inmate is dissatisfied with the response, the inmate may file a regular grievance. Id. § I(D)(4). The inmate "must deliver the original [regular grievance] with attached document(s) to the Grievance Mailbox within 30 days from the original incident or discovery of the incident . . . ." Id. § III(B)(5). The documents that must be filed with the regular grievance include a copy of the informal written complaint. Id. § III(B)(6).

If a regular grievance satisfies the intake criteria, "staff must accept the grievance and log it into VACORIS using the received date." Id. § III(C)(4). When a regular grievance is accepted and logged into VACORIS, the "Facility Unit Head" is responsible for providing a Level I response within 30 calendar days. Id. § III(F)(1)–(2). If an inmate is dissatisfied with the response, the inmate may appeal to Level II. Id. § IV(C). "Level II responses are provided by the Regional Administrator, Health Services Director, Chief of Operations for Offender Management Services, or Superintendent for Education," and "[f]or most issues, Level II is the final level of review." Still Decl. ¶ 13. OP 866.1 explains that an inmate must exhaust all of the requirements of the grievance procedure before seeking judicial relief and that "[t]he exhaustion requirement is met only when a Regular Grievance has been accepted into the grievance process and appealed, without satisfactory resolution of the issue." OP 866.1 § V(A)–(B).

5

## B.    Carter's Exhaustion Efforts

In support of the pending motion for summary judgment, King submitted an affidavit executed by T. Still, the institutional ombudsman at Red Onion. In the affidavit, Still states that she reviewed Carter's grievance records and that the records include an emergency grievance written on October 27, 2023, after the instant action was filed, in which Carter complained of penile swelling and abnormal bulges. Still Aff. ¶ 14. Still asserts, however, that Carter did not submit "any regular grievances that [were] processed through the required levels of appeal on the claims [asserted against King]." Still Aff. ¶ 16. Based on Still's affidavit, King argues that Carter's claims are barred by the PLRA for failure to exhaust administrative remedies.

In response, Carter argues that the motion for summary judgment should be denied because correctional officers hindered his ability to exhaust his administrative remedies. This argument is supported by sworn allegations in Carter's original and amended complaints. See Goodman v. Diggs, 986 F.3d 493, 499 (4th Cir. 2021) (concluding that the plaintiff's "original and first amended complaints, which were verified and based on [the plaintiff's] personal knowledge," were "the equivalent of opposing affidavits" on summary judgment). Carter alleges, under penalty of perjury, that he attempted to obtain written complaints from correctional officers after he began experiencing testicular pain and swelling, that the officers "would never give them to [him]," and that they informed him that King had instructed them not to do so. Am. Compl. 3, 9; see also Original Compl., ECF No. 1, at 3, 9. Carter has also submitted a sworn declaration in which he asserts that he was consistently denied access to written complaint forms from the time he arrived at Red Onion on April 17, 2023, until he

6

filed this action in July 2023. Carter Decl. Opp'n Mot. Summ. J., ECF No. 59–1, at ¶¶ 2–4. During that time period, Carter was housed in solitary confinement at Red Onion. Am. Compl. 2.

Viewing the record in the light most favorable to Carter, the court concludes that a genuine dispute of material fact exists as to whether the VDOC's grievance process was actually "available" to Carter during the time period at issue. 42 U.S.C. § 1997e(a). As previously noted, "an administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." Moore, 517 F.3d at 725. "Thus, 'when prison officials prevent inmates from using the administrative process . . . , the process that exists on paper becomes unavailable in reality.'" Hill v. O'Brien, 387 F. App'x 396, 400 (4th Cir. 2010) (quoting Kaba v. Stepp, 458 F.3d 678, 684 (7th Cir. 2006)). Here, it is undisputed that "[t]he grievance process first requires submission of an informal [written] complaint," Still Aff. ¶ 6, and Carter has repeatedly asserted that correctional officers refused to give him written complaint forms while he was housed in solitary confinement. The mere fact that Carter was able to submit an emergency grievance in October 2023—three months after filing this action—does not conclusively refute his assertion that correctional officers thwarted his ability to properly exhaust his administrative remedies before filing suit. See Moss v. Harwood, 19 F.4th 614, 622 (4th Cir. 2021) (recognizing that an inmate able to file one grievance is not necessarily able to file other grievances at different times). Thus, based on the current record, King is not entitled to summary judgment on the issue of exhaustion.

### IV. Conclusion

For the reasons stated, King's motion for summary judgment, ECF No. 51, is **DENIED**. King shall have 30 days to file any motion for summary judgment addressing the merits of Carter's claims. An appropriate order will be entered.

Entered: January 28, 2025

Mike Urbanski
Senior U.S.District Judge
2025.01.28 12:42:37
-05'00'

Michael F. Urbanski
Senior United States District Judge