CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED
February 26, 2025
LAURA A. AUSTIN, CLERK
BY: s/J.Vasquez
   DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| BENJAMIN CARTER, ) | |
|     Plaintiff, ) | Case No. 7:23-cv-00425 |
| ) | |
| v. ) | |
| ) | By: Michael F. Urbanski |
| CHRISTOPHER KING, et al., ) | Senior United States District Judge |
|     Defendants. ) | |

## MEMORANDUM OPINION

Benjamin Carter, a former Virginia inmate proceeding pro se, filed this civil action under 42 U.S.C. § 1983 against Christopher King and Leah Holbrook. The case is presently before the court on Holbrook's motion to dismiss and for summary judgment. ECF No. 56. For the reasons set forth below, the motion is **DENIED IN PART AND DENIED WITHOUT PREJUDICE IN PART**.

### I.  Background

**A.  Summary of Allegations and Claims**

This case arises from events that allegedly occurred after Carter was transferred back to Red Onion State Prison (Red Onion) and placed in solitary confinement on April 17, 2023. See Verified Am. Compl. (Am. Compl.), ECF No. 34, at 2. At all times relevant to the case, King was on the correctional staff at Red Onion, and Holbrook worked at the prison as a nurse practitioner. Id. at 1. Carter had previously filed a lawsuit against King and other Virginia Department of Corrections (VDOC) employees, which remained pending at the time Carter returned to Red Onion. Id. at 2 (citing Carter v. Ely, No. 7:20-cv-00713 (W.D. Va.)).

According to the amended complaint, Carter began experiencing severe pain and swelling in his testicles on the night of April 17, 2023. Id. The next day, after his requests for medical assistance went unanswered, Carter verbally complained to correctional officers about the pain and swelling. Id. at 3. The correctional officers informed Carter that "the 'Major' (referring to King) told them 'not' to give [Carter] written complaints and to let [him] 'suffer' because [Carter] sued [King]." Id.; see also id. (alleging that an unidentified officer "said that King had instructed them (ROSP staff) not to give [Carter] anything regarding paperwork to help [Carter] 'sue' him (King)").

Carter continued to experience testicular pain and swelling. Id. When he finally saw Dr. Fox[1] a month later, the physician diagnosed him with a hydrocele, ordered an ultrasound, and prescribed a jockstrap to alleviate the pain and swelling. Id. at 4. The physician also prescribed Tylenol to help manage the pain until Carter received the jockstrap. Id. King, however, refused to allow Carter to have the jockstrap, and the pain and swelling increased. Id. at 4–5. When Carter reported his worsening symptoms to Holbrook, she deferred to King's decision to disallow the jockstrap. Id. at 5.

The pain and swelling persisted, and Carter was rushed to the medical department on May 26, 2023. Id. at 5. Nurses responsible for assisting him "apologized for King denying [him] prescribed medical treatment and stated that they went over King . . . to the Warden . . . to approve the prescribed jockstrap." Id. By that point, the hydrocele had worsened and required further medical attention. Id. at 5–6. Carter alleges that Dr. Fox ordered another

---

[1] Dr. Fox's last name is spelled "Foxx" in the amended complaint. However, exhibits in the record indicate that his last name has only one "x."

2

ultrasound and referred Carter to a urologist for a surgical consultation, but that Holbrook "went back over Dr. [Fox's] order and cancelled the appointment in the first week of June 2023." Id. (internal quotation marks omitted).

Carter claims that Holbrook continued to prevent him from receiving adequate medical treatment for his testicular issues and that he was "subject to even more retaliatory conduct" after he filed this action in July 2023. Id. at 6. According to the amended complaint, "Holbrook constantly made statements . . . saying she would make sure [Carter's] testicles [got] infected as long as [he was] in the Western Region of VDOC [because he] sued her 'brothers'" (referring to the civil action previously filed against King and other correctional officers), and that Carter "was going to continue to suffer until [his] testicles were the size of a 'volleyball' before [he] was even 'considered' for the surgical procedures [needed for his] testicles and scrotum sack to stop aching, itching, and swelling . . . ." Id. at 6–7.

Carter alleges that he was subsequently diagnosed with small hydroceles in both testicles, in addition to edema of the scrotum. Id. at 7. He asserts that the delay in treating the hydroceles caused him to experience constant pain in his inner thighs; scrotal burning from "constant rashes, itching, and open sores"; and difficulty walking, lying, sitting, and using the bathroom without "extreme discomfort" and pain. Id. Carter further asserts that Holbrook continued to deny him medical treatment for the hydroceles, including a recommended referral to VCU Medical Center to be evaluated for a possible surgical procedure. Id. at 8.

Based on the foregoing allegations, Carter asserts two claims for relief against Holbrook: (1) that she refused to provide medical treatment in retaliation for exercising his First Amendment right to file lawsuits; and (2) that she violated his Eighth Amendment right

3

to be free from cruel and unusual punishment by failing to provide adequate medical treatment. Id. at 8–9.

**B.     Holbrook's Motion**

In response to Carter's amended complaint, Holbrook filed a motion to dismiss and for summary judgment. ECF No. 56. The motion raises three arguments: (1) that the claim of retaliation should be dismissed for failure to state a claim upon which relief may be granted; (2) that both claims are barred on the basis that Carter failed to exhaust his administrative remedies prior to filing suit; and (3) that Holbrook is entitled to summary judgment on the merits of the Eighth Amendment claim. See Def.'s Mem. Supp. Mot. Dismiss and Summ. J. (Def.'s Mem.), ECF No. 57, at 2. The motion has been fully briefed and is ripe for review.

## II.     Standards of Review

**A.     Motion to Dismiss**

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits defendants to seek dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff's allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. While "detailed factual allegations" are not required, "a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555.

4

When evaluating whether a complaint states a claim upon which relief can be granted, "the court must construe all factual allegations in the light most favorable to the plaintiff." Wilcox v. Brown, 877 F.3d 161, 166–67 (4th Cir. 2017). "Additionally, when a plaintiff raises a civil rights issue and files a complaint pro se, the court must construe pleading requirements liberally." Id. Nevertheless, "[p]rinciples requiring generous construction of pro se complaints are not . . . without limits." Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985). A complaint filed without the assistance of counsel "still must contain enough facts to state a claim for relief that is plausible on its face." Thomas v. Salvation Army S. Terr., 841 F.3d 632, 637 (4th Cir. 2016) (internal quotation marks omitted).

**B.     Motion for Summary Judgment**

Under Rule 56 of the Federal Rules of Civil Procedure, the court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When ruling on a motion for summary judgment, the court "must construe all facts and reasonable inferences in the light most favorable to the nonmoving party." Shaw v. Foreman, 59 F.4th 121, 129 (4th Cir. 2023). The court "cannot weigh the evidence or make credibility determinations." Jacobs v. N.C. Admin. Office of the Courts, 780 F.3d 562, 569 (4th Cir. 2015).

"A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). "Materials

5

that are not yet in the record—including materials referred to in an affidavit or declaration—must be placed in the record." Fed. R. Civ. P. 56, advisory comm. note to 2010 amendments.

A court may deny or defer considering a motion for summary judgment if a nonmoving party "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition. Fed. R. Civ. P. 56(d). "Relief under Rule 56(d) is . . . 'broadly favored' in [the Fourth] Circuit and should be 'liberally granted.'" Jenkins v. Woodard, 109 F.4th 242, 250 (4th Cir. 2024) (quoting Pledger v. Lynch, 5 F.4th 511, 526 (4th Cir. 2021)). "This is especially true in the context of pro se litigation and when the movant exclusively controls evidence relevant to the nonmovant's opposition." Id.

### III.   Discussion

**A.   Sufficiency of the Retaliation Claim**

The court will first address Holbrook's contention that the amended complaint fails to state a viable claim of retaliation against her. Although retaliation is not specifically referenced in the Constitution, it "is nonetheless actionable because retaliatory actions may tend to chill individuals' exercise of constitutional rights." ACLU, Inc. v. Wicomico Cnty., 999 F.2d 780, 785 (4th Cir. 1993). In order to state a colorable First Amendment retaliation claim, a plaintiff must plausibly allege: (1) that he engaged in activity protected by the First Amendment; (2) that the defendant took some action that would likely deter a person of ordinary firmness from exercising his First Amendment rights; and (3) that there was a causal relationship between the inmate's protected activity and the defendant's conduct. Martin v. Duffy, 858 F.3d 239, 249 (4th Cir. 2017).

6

Here, Holbrook "admits that Carter's filing of a lawsuit is a protected First Amendment activity for purposes of the first element of a retaliation claim." Def.'s Mem. 17. Additionally, at this stage of the proceedings, Holbrook does not dispute that allegations of being denied medical treatment are sufficient to satisfy the second element. Id. at n.1. Instead, Holbrook focuses on the third element, arguing that Carter has failed to adequately allege a causal relationship between his filing of a lawsuit against King and other VDOC employees and the purported denial of medical treatment.

Holbrook's lack-of-causation argument is premised on the fact that Carter initially filed the lawsuit against King and other VDOC employees in 2020, nearly three years prior to the events giving rise to this action. Holbrook contends that the absence of temporal proximity is fatal to the retaliation claim. See Def.'s Mem. 18 ("In other contexts in which a person may assert a claim of retaliation against a government official, multiple courts have held that shorter periods of time between the protected activity and the adverse action are plainly insufficient to support a claim.") The problem with this argument, however, is that "temporal proximity is not the sole avenue to allege and later show causation." Gaines v. Balt. Police Dep't, 657 F. Supp. 3d 708, 746 (D. Md. 2023) (citing Smith v. CSRA, 12 F.4th 396, 417 (4th Cir. 2021)). A plaintiff may alternatively rely on other facts that "suggest that the adverse action occurred because of the protected activity." Roberts v. Glenn Indus. Grp., Inc., 998 F.3d 111, 123 (4th Cir. 2021). "The existence of relevant facts alone, or together with temporal proximity, may be used to establish a causal connection between the protected activity and the adverse action." Id. (emphasis added).

7

In the amended complaint, Carter alleges that Holbrook denied him medical treatment for his testicular issues and that she "constantly made statements" indicating that "she would make sure [his] testicles [got] infected" and that he "continue[d] to suffer" because Carter had "sued her 'brothers,'" referring to the lawsuit against King and other VDOC employees. Am. Compl. 6. Such allegations, if proven, would likely constitute direct evidence of retaliation. See Johnson v. UPS, Inc., 839 F. App'x 781, 783 (4th Cir. 2021) ("Direct evidence encompasses conduct or statements that both (1) reflect directly the alleged retaliatory attitude, and (2) bear directly on the contested . . . decision.") (internal quotation marks and brackets omitted). Thus, at this stage of the case, Carter has alleged sufficient facts to state a plausible claim of retaliation against Holbrook. Accordingly, her motion to dismiss under Rule 12(b)(6) is denied.

### B.    Failure to Exhaust Administrative Remedies

Holbrook has moved for summary judgment on both claims asserted against her on the basis that Carter failed to exhaust his administrative remedies prior to filing suit, as required by the Prison Litigation Reform Act (PLRA). The PLRA provides that "[n]o action shall be brought" in federal court by an inmate challenging prison conditions "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court has held that the exhaustion requirement "applies to all inmate suits about prison life," Porter v. Nussle, 534 U.S. 516, 532 (2002), and that "proper exhaustion" is required, which "means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issue on the merits)," Woodford v. Ngo, 548 U.S. 81, 90 (2006). "A prisoner need not exhaust remedies," however, "if they are not 'available.'" Ross v. Blake, 578 U.S. 632, 636 (2016) (quoting 42 U.S.C. § 1977e(a)). And the Supreme Court has recognized that an administrative

8

remedy is not available when correctional officials "thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. at 644.

In response to Holbrook's motion for summary judgment, Carter asserts that the VDOC's inmate grievance procedure was not available to him because correctional officers at Red Onion thwarted his ability to access it. This argument is supported by sworn allegations in Carter's original and amended complaints. See Goodman v. Diggs, 986 F.3d 493, 499 (4th Cir. 2021) (concluding that the plaintiff's "original and first amended complaints, which were verified and based on [the plaintiff's] personal knowledge," were "the equivalent of opposing affidavits" on summary judgment). Carter alleges, under penalty of perjury, that he attempted to obtain written complaints from correctional officers after he began experiencing testicular pain and swelling, that the officers "would never give them to [him]," and that they informed him that King had instructed them not to do so. Am. Compl. 3, 9; see also Original Compl., ECF No. 1, at 3, 9. Carter also submitted a notarized affidavit in which he avers that he was "denied written complaints by [Red Onion] guards and officials and had NO WAY to access the grievance procedure . . . 'prior' to filing the suit" in July 2023. Carter Aff. Opp'n Mot. Summ. J., ECF No. 65-1, at 1.

Viewing the record in the light most favorable to Carter, the court concludes that a genuine dispute of material fact exists as to whether the institutional grievance procedure was actually available to Carter during the time period at issue. "[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008). Courts have recognized that a prison official's refusal to provide grievance forms is one scenario that

9

renders a grievance process unavailable. See Coopwood v. Wayne Cnty., 74 F.4th 416, 423 (6th Cir. 2023) ("This court has held that administrative remedies are not available if prison employees refuse to provide inmates with necessary grievance forms when requested.") (internal quotation marks omitted); Gooch v. Young, 24 F.4th 624, 627 (7th Cir. 2022) ("[E]xhaustion is not required when the prison officials responsible for providing grievance forms refuse to give a prisoner the forms necessary to file an administrative grievance. Evidence of the appropriate official's refusal to give a prisoner an available form is sufficient to permit a finding that the administrative remedies were not available.") (internal quotation marks and citations omitted); Neale v. Hogan, No. 21-7287, 2022 WL 12325186, at *2 (4th Cir. Oct. 21, 2022) ("We are satisfied that the district court erred in dismissing Neale's complaint for failure to exhaust his administrative remedies. Neale offered evidence that the [Administrative Remedy Procedure (ARP)] was not available to him because correctional officers failed to provide ARP forms to inmates in his housing unit. While the defendants offered competing evidence, which perhaps created an issue of fact, any such issue of fact must be resolved in Neale's favor at this stage."). Carter's sworn statements, taken as true, create a dispute of fact as to whether correctional officers prevented him from utilizing the grievance procedure. Thus, Holbrook is not entitled to summary judgment on the exhaustion defense.[2]

---

[2] The court reached the same conclusion with respect to the exhaustion-based motion for summary judgment filed by defendant King. See Carter v. King, No. 7:23-cv-00425, 2025 WL 320952, at *3 (W.D. Va. Jan. 28, 2025). King has since filed a motion requesting an evidentiary hearing on exhaustion. ECF No. 85. That motion will be granted, and the matter will be referred to a United States Magistrate Judge.

10

C.  **Merits of the Eighth Amendment Claim**

Holbrook has also moved for summary judgment on the merits of the Eighth Amendment claim asserted against her. Relying largely on her own affidavit, Holbrook argues that even if Carter's testicular issues constituted a serious medical need, Carter received adequate and appropriate medical treatment. See Def.'s Mem. 23; see also id. at 5–12. The affidavit signed by Holbrook contains more than 25 paragraphs that refer to information in Carter's medical records. See Holbrook Aff., ECF No. 57-2, ¶¶ 13–39. However, some of the referenced medical records are not included with the affidavit and do not appear to be part of the record in this case.

Carter has filed a brief in opposition to Holbrook's motion in which he argues that Holbrook is "attempting to cherry pick the files and records to have [his] lawsuit thrown out on the basis of cherry[-]picked evidence," and that portions of his medical chart are missing from the medical records that a United States Magistrate Judge ordered Holbrook to produce in May 2024. See Pl.'s Br. Opp'n Mot. Dismiss and Summ. J., ECF No. 65, at 5–6, 9; see also Minute Order, ECF No. 48 (directing Holbrook to provide a copy of Carter's medical records from April 17, 2023, to the current date). Carter also separately filed a motion for spoliation sanctions in which he indicates that "medical folder #2" is missing from the records provided to him in response to the magistrate judge's order and that the missing folder "contained EVERYTHING medically ordered, observed, complained of, and pertaining to [Carter's] hydroceles from April 2023–February 2024." Pl.'s Decl. Supp. Mot. Sanctions, ECF No. 72-1 at 1; see also Pl.'s Mot. Sanctions, ECF No. 72, at 1 (asserting that "Carter's medical records,

11

especially of the dates in question from April 2023—March 2024 are gone (missing [or] destroyed)").

Holbrook has filed a response in opposition to the motion for sanctions in which she asserts that the motion is "based entirely on [Carter's] own speculation and conjecture about what happened to portions of his records." Def.'s Resp. Opp'n Mot. Sanctions, ECF No. 75, at 1. However, it is unclear from the response whether Holbrook believes that she fully complied with the magistrate judge's order that directed her to produce the medical records requested by Carter, or whether portions of the requested medical records are, in fact, missing from the files maintained by the Virginia Department of Corrections. And, as noted above, the affidavit that Holbrook executed in support of her motion for summary judgment refers to medical records that were not submitted with the affidavit or otherwise part of the existing record. Thus, the court is left with no way of knowing whether Holbrook still has access to all of Carter's medical records from the relevant timeframe and, if so, whether the records were provided to Carter in accordance with the magistrate judge's order.

Based on the foregoing circumstances, the court concludes that Holbrook's motion for summary judgment on the merits of Carter's Eighth Amendment claim cannot be resolved at this time. As explained above, Rule 56(d) permits a court to deny or defer ruling on a motion for summary judgment upon a showing by the nonmovant that it "cannot present facts essential to justify its opposition," Fed. R. Civ. P. 56(d), and the Fourth Circuit has made clear that "relief under Rule 56(d) should be liberally granted to protect nonmoving parties from premature summary judgment motions," Boyle v. Azzari, 107 F.4th 298, 301 (4th Cir. 2024) (internal quotation marks omitted). Carter's brief in opposition to the motion for summary

judgment and his motion for sanctions clearly provide "fair notice of a potential dispute as to the sufficiency of the summary judgment record." Pledger, 5 F.4th at 526; see also Shaw, 59 F.4th at 128 ("Although this Court places great weight on the requirement of a Rule 56(d) affidavit, even in the affidavit's absence, a district court abuses its discretion by granting summary judgment when it otherwise has fair notice of potential disputes as to the sufficiency of the summary judgment record.") (internal quotations marks, citations, and alterations omitted). Consequently, Holbrook's motion for summary judgment on the merits of the Eighth Amendment claim will be denied without prejudice under Rule 56(d).

In an effort to clarify the record, the court will also construe Carter's motion for spoliation sanctions against Holbrook as a motion to compel Holbrook to comply with the discovery order entered by the magistrate judge on May 2, 2024 (ECF No. 48). Holbrook will be directed to file a response to the motion to compel within 14 days. The response shall set forth Holbrook's position as to whether all of the requested medical records were provided to Carter and, if not, the reason why records were not produced. Once the pending discovery issues are resolved, the court will set a new deadline for Holbrook to file a renewed motion for summary judgment on the merits of Carter's claims.

### IV.  Conclusion

For the reasons stated, Holbrook's motion to dismiss and for summary judgment, ECF No. 56, is **DENIED IN PART AND DENIED WITHOUT PREJUDICE IN PART**. An appropriate order will be entered.

Entered: February 25, 2025

Michael F. Urbanski
U.S. District Judge
2025.02.25 15:15:39
-05'00'

Michael F. Urbanski
Senior United States District Judge

14